George ZELINSKI, Jr. and Pinbreaker, Inc., Plaintiffs–Appellants,

v.

BRUNSWICK CORPORATION, Defendant–Appellee.

No. 98–1214.

United States Court of Appeals, Federal Circuit.

July 29, 1999.

Stephen G. Kehoe, Law Offices of Stephen G. Kehoe, of Chicago, Illinois, argued for plaintiffs-appellants. With him on the brief was Shashank S. Upadhye, Potthast & Ring, of Chicago, Illinois.

Michael O. Warnecke, Mayer, Brown & Platt, of Chicago, Illinois, argued for defendant-appellee.

Before PLAGER, RADER, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge PLAGER. Circuit Judge RADER concurs in the result.

PLAGER, Circuit Judge.

George Zelinski, Jr. and Pinbreaker, Inc. ("Zelinski") appeal from the decision of the United States District Court for the Northern District of Illinois. The district court granted Brunswick Corp. ("Brunswick") summary judgment of non-infringement on the claims of Zelinski's U.S. Patent No. 5,046,731 ("the '731 patent"). *See Zelinski v. Brunswick Corp.*, 996 F.Supp. 757 (N.D.Ill.1997). The '731 patent claims an improved bowling ball. Based on its claim construction, the district court found no literal infringement of independent claim 1 of the '731 patent. *See id.* at 762–63. The court also concluded that no reasonable jury could find for Zelinksi under the doctrine of equivalents. *See id.* at 764. Because the district court did not err, we affirm.

## BACKGROUND

George Zelinski, Jr. owns the '731 patent, which is licensed exclusively to Pinbreaker, Inc. Zelinski filed this patent infringement action against Brunswick, alleging that Brunswick's SteathCore I and II bowling balls infringe independent claim 1 and dependent claims 2 to 14 of the '731 patent. Claim 1 provides:

A bowling ball having a spherical mass of preselected density and a spherical surface equidistant from a center of the spherical mass, the improvement being a weight block of a density, greater than said preselected density in which said weight block comprises:

a first elongate section having a pair of opposite ends with an intermediate portion therebetween adjacent the spherical surface; and

another elongate section having an axis of symmetry extending in a direction generally transverse of the first elongate section and extending from the intermediate portion and *located between* the center of the spherical mass and the first elongate section.

(Emphasis added.)

The '731 patent claims a bowling ball which is intended to "hook" or migrate into the bowling pin "pocket" in a predictable manner after it is thrown. This provides maximum pin displacement with minimum pin deflection. The hook occurs when the spin axis migrates, from the initial spin axis created when the bowler releases the ball, to the ball's dominant spin axis. An eccentrically placed, symmetric weight block within the ball produces this dominant spin axis.

Zelinski's invention, as described in the '731 patent, contains for purposes of this appeal two pertinent differences from the prior art. Figures 1 and 2 of the '731 patent are illustrative:

Fig. 1

Fig. 2

First, Zelinski uses a relatively localized two-piece weight block (18), consisting of one elongate weight (20) located along and near the surface of the ball and a second weight (26) transverse and in an intermediate position from the first weight section which extends toward the center of the ball (16). The density of the weight block is greater than the density of the ball's spherical weight core (34). Second, Zelinski discloses that in order to achieve a desired breaking point (hook) for the ball, the thumb and finger holes should be drilled around the center axis of the weight block at a preselected angular relationship to the weight block's plane of symmetry.

In comparison, Brunswick's StealthCore I and II bowling balls contain a spherical outer shell of polyurethane, a spherical center, an annular ring encircling the spherical center, and an eccentric weight on top of the annular ring. The eccentric top weight compensates for the weight loss created when finger holes are drilled into the ball. Brunswick's eccentric top weight and annular ring assembly are made of a heavy material of a greater density than that of the polyurethane shell.

The current appeal centers around the meaning of "located between" in claim 1 of the '731 patent. The patent specification does not contain a definition of the term "located." The district court reasoned that in the context of defining the relative spatial position and orientation of sections

of the disclosed weight block within a bowling ball, a narrow interpretation of "located" was required to give direct and clear meaning to the phrase "located between." *See Zelinski,* 996 F.Supp. at 761. Thus, the district court construed claim 1 to require that the second elongate section be located *entirely* between the center of the spherical mass and the first elongate section. *See id.* at 762.

Under this claim construction, the court concluded that Brunswick's annular ring could not be "a second elongate section located between the center of the spherical mass and the first elongate section" because most of the annular ring is not located between the center of the spherical mass and the first elongate section. *Id.* Consequently, the district court held that Brunswick was entitled to summary judgment on the issue of literal infringement of claim 1 since Zelinski could not demonstrate that each and every limitation of claim 1 was met by a corresponding element in Brunswick's StealthCore I and II bowling balls. *See id.*

The district court completed its analysis by addressing the issue of infringement under the doctrine of equivalents. The court read claim 1 to contain three limitations; it concluded that the only limitation in claim 1 without a literal counterpart in Brunswick's bowling balls was the "second elongate section." *See id.* at 763. Thus, the district court analyzed whether the annular ring in Brunswick's bowling balls

is equivalent to the second elongate section described in the '731 patent. The court concluded that Zelinski failed to offer any factual evidence from which a jury could reasonably infer equivalence. *See id.* at 764. Furthermore, the district court concluded that Zelinski's purported lack of opportunity for discovery on equivalence was unsupported in the record. *See id.* For these reasons, the district court granted summary judgment to Brunswick of non-infringement under the doctrine of equivalents.

Zelinski appeals the grant of summary judgment of non-infringement to Brunswick. We have jurisdiction to hear this appeal under 28 U.S.C. § 1295 (1994).

## DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). We review without deference a trial court's grant of summary judgment, with all justifiable factual inferences drawn in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 The determination of infringement requires a two-step analysis: (1) claim construction to determine the scope and meaning of the claims asserted to be infringed, and then (2) a determination of whether the properly construed claims encompass the accused device. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed. Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is a matter of law over which we have independent review. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1451, 1456, 46 USPQ2d 1169, 1171, 1174 (Fed.Cir.1998) (en banc). Whether a claim encompasses an accused device, either literally or under the doctrine of equivalents, is a question of fact. *See, e.g., North Am.*

*Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1574, 28 USPQ2d 1333, 1335 (Fed.Cir.1993).

### A.

 It is standard practice that in determining the proper construction of an asserted claim, the court looks first to the intrinsic evidence—the patent specification, including of course the written description, and, if in evidence, the prosecution history. Absent an express definition in the specification of a particular claim term, the words are given their ordinary and accustomed meaning; if a term of art, it is given the ordinary and accustomed meaning as understood by those of ordinary skill in the art.

 As noted, this case turns upon the meaning of the phrase "located between." The district court concluded that neither the claims nor the written description define the term "located;" thus the court was called upon to chose between Brunswick's and Zelinski's "ordinary and accustomed" meanings of that term. The district court adopted Brunswick's interpretation of "located between" to mean wholly or entirely located between. Thus, in the context of claim 1, the second elongate section "must be located only between the center of the spherical mass and the first elongate section." *See Zelinski,* 996 F.Supp. at 760.

On appeal, Zelinski alleges that the district court erred by reading "located between" too narrowly. Zelinski argues that its interpretation of "located between," which includes any weight that is in whole or in part between the center of the spherical mass and the first elongate section, is the construction one of ordinary skill in the art would ascribe to the phrase at issue.

In ascertaining the scope and meaning of claim 1, including the phrase "located between," we are guided by the written description. *See Markman,* 52 F.3d at 979, 34 USPQ2d at 1329. We agree that neither the claims nor the written descrip-

tion specifically define the phrase "located between." Similarly, the prosecution history of the '731 patent contains no relevant amendments or explanations. Thus, we must construe the phrase by its ordinary and accustomed meaning to one of ordinary skill in the art. *See, e.g., Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir. 1992).

Zelinski's argument is not without merit. Although the written description does not explicitly define "located between," there is language suggesting that the district court may have interpreted the phrase too narrowly. From our reading of the written description, it appears that the second elongate section need not be *entirely* located between the first elongate section and the center of the spherical mass. For example, the written description states that no portion of the weight block is disposed in the bottom portion of the ball. *See* '731 patent, col. 3, ll. 49–51. This statement is followed by a restatement of the concept in the positive; that is, the entire weight block is "relatively localized" in the top half of the ball. *Id.* at ll. 57–59. Thus, it seems that claim 1 is satisfied if the bulk of the second elongate section is between the first elongate section and the center of the spherical mass, and the entire weight block is in the top half of the ball. Nevertheless, we conclude that at most the district court's narrower interpretation is harmless error because, as we explain below, even with a somewhat broader interpretation of "located between," Brunswick's StealthCore I and II balls do not literally infringe claim 1 of the '731 patent. *But cf. Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581, 37 USPQ2d 1365, 1372 (Fed. Cir.1996) (favoring narrow interpretation when a choice is presented).

### B.

█ The second step of an infringement analysis requires that the patentee prove that the accused device embodies every limitation in the claim, either literally, or by a substantial equivalent. *See Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1578, 27 USPQ2d 1836, 1840 (Fed.Cir.1993).

█ In its literal infringement analysis, the district court concluded that the annular ring does not correspond to the "second elongate section" limitation of claim 1. Even if we construe "located between" more expansively than the district court, we still agree that the annular ring cannot qualify as the "second elongate section." As the district court observed, "at least half of the annular ring [the part of the ring in the bottom half of the ball] is not located between the center of the spherical mass and the first elongate section," *Zelinski*, 996 F.Supp. at 762. Thus, under either the district court's interpretation or a somewhat broader interpretation that arguably could be made, as suggested above, there can be no literal infringement of claim 1 by the Brunswick balls. The district court did not err in granting summary judgment of no literal infringement of claim 1 of the '731 patent to Brunswick.

### C.

█ Even if an accused product differs enough from an asserted claim to preclude literal infringement, that product may infringe under the doctrine of equivalents if there is equivalence between those elements of the accused product and the claimed limitations of the patented invention that are not literally infringed. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Infringement lies under the doctrine only if an equivalent or a literal correspondence of every limitation of the claim is found in the accused device. *See id.* at 29, 117 S.Ct. 1040. An element is equivalent if the differences between the element and the claim limitation are "insubstantial." One test used to determine "insubstantiality" is whether the element performs substantially the same function

in substantially the same way to obtain substantially the same result as the claim limitation. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ Whether a claim is infringed under the doctrine of equivalents may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent. *See Warner–Jenkinson,* 520 U.S. at 39 n. 8, 117 S.Ct. 1040. At trial, the patentee bears the ultimate burden of proving equivalence. *See Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1196, 32 USPQ2d 1338, 1340 (Fed.Cir.1994).

■ On appeal, Zelinski argues that the StealthCore I and II balls' eccentric top weight and annular ring perform the identical functions in the exact same manner with the same result as the two-piece weight block claimed in the '731 patent. The district court found that Zelinski failed to produce evidence of the equivalency of Brunswick's annular ring to the second elongate section of the '731 patent. *See Zelinski,* 996 F.Supp. at 765. The only evidence Zelinski submitted to the trial court on equivalence was a statement by a patent attorney expert. The district court properly characterized this statement as conclusory due to the expert's assertion without any further explanation that "[b]ecause there is literal infringement, there is infringement under the doctrine of equivalents." *Zelinski,* 996 F.Supp. at 764.

This assessment by the trial court does not constitute impermissible fact-finding as Zelinski claims. Rather, the court was correctly trying to determine if the expert's testimony raised a genuine issue for trial. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (clarifying that at the summary judgment stage the judge's function

is not to weight the evidence and determine the truth of the matter but to determine if there is a genuine issue for trial). We agree with the trial court that the statement fails to provide the necessary evidentiary basis to support a claim that there is a genuine issue of material fact on equivalence. *See, e.g., Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866, 876, 48 USPQ2d 1161, 1169–70 (Fed.Cir.1998) (reasoning that conclusory expert declarations devoid of facts upon which the conclusions were reached fail to raise a genuine issue of material fact which would preclude summary judgment).

To the extent that Zelinski raises other arguments on various errors allegedly committed by the trial court in carrying out its equivalency decision, we find them unpersuasive. Thus, we affirm the district court's judgment of non-infringement under the doctrine of equivalents [1] as well. *See Intellicall,* 952 F.2d at 1389, 21 USPQ2d at 1387–88 (affirming the district court's grant of Intellicall's motion for summary judgment of noninfringement under the doctrine of equivalents because Phonometrics failed to produce evidence on the equivalency of the function performed by Intellicall's accused device to the function required in claim 1 of Intellicall's patent); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry to summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## CONCLUSION

For the above reasons, we affirm the district court's grant of summary judgment to Brunswick.

---

1. Fed.R.Civ.P. 56(f) precludes the grant of summary judgment if the nonmoving party has not had the opportunity to discover information that is essential to opposing the summary judgment motion. Although Zelinski argued before the district court that it lacked the opportunity to take discovery on equivalency matters, this issue was not raised on appeal.

## COSTS

Parties shall bear their own costs.

*AFFIRMED.*

RADER, Circuit Judge, concurs in the result.