**Harold T. PEHR, Plaintiff,**

v.

**RUBBERMAID, INC., Defendant.**

No. 99–2089–JWL.

United States District Court, D. Kansas.

March 8, 2000.

Michael Elbein, Kent R. Erickson, Litman, Kraai & Brown, L.L.C., Kansas City, MO, Douglas M. Weems, Spencer, Fane, Britt & Browne, Kansas City, MO, Mark M. Grossman, Lee F. Grossman, Randall G. Rueth, Grossman & Grossman, Ltd., Chicago, IL, for Plaintiff.

J. Eugene Balloun, William R. Sampson, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Richard J. Hoskins, Robert S. Rivkin, Christopher B. Schneider, Schiff, Hardin & Waite, Chicago, IL, for Defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this patent infringement case, plaintiff alleges that defendant's distribution and sale of a latch mechanism used on particular models of its *ActionPacker* ® containers infringe certain claims of United States Patents Nos. 4,925,041 (the

" '041 patent") and 5,137,260 (the " '260 patent"). Presently before the court are defendant's motion for summary judgment of non-infringement (doc. 48) and plaintiff's motion for leave to file a two page sur-reply (doc. 61). For the reasons set forth in detail below, defendant's motion is granted and plaintiff's motion is denied. Plaintiff's complaint is dismissed in its entirety.

## I. Background

The following facts are undisputed or are related in the light most favorable to the plaintiff. Plaintiff Harold T. Pehr ("Pehr") designs container latch and closure mechanisms. On February 26, 1988, plaintiff applied for a patent on one of his newly-developed container closure devices. Mr. Pehr's invention was designed to make containers more "child-resistant" but still relatively simple for adults of limited manual dexterity to open. While Mr. Pehr's application was pending, he filed two continuation patent applications on his latch mechanism invention. On May 15, 1990, United States Patent No. 4,925,041, entitled "Closure for Container," was issued by the United States Patent and Trademark Office ("PTO") in favor of Mr. Pehr. Approximately two years later, on August 11, 1992, the PTO granted United States Patent No. 5,137,260, entitled "Child Resistant Container with Flush Latched Closure," on Mr. Pehr's second continuation application.

At some point in December of 1997, defendant Rubbermaid, Inc. ("Rubbermaid") introduced its line of *ActionPacker* ® products. The *ActionPacker* ® products line is comprised of plastic storage containers, various models of which, according to plaintiff, infringe certain claims of the '041 and '260 patents by incorporating a latch mechanism very similar to that disclosed by the '041 and '260 patents. More specifically, plaintiff alleges that the accused devices infringe claim 4 of the '041 patent, and claims 1–3 of the '260 patent.

Claim 4 of the '041 patent reads as follows:

In a latch mechanism for securing a closure member to a container body including a latch secured at one end thereof to a first of the closure member or the container body; said closure member and said container body being movable relative to each other between an open and a closed configuration, the improvement comprising wherein:

(a) said latch comprises an elongate tongue having a rear surface and having a tooth extending outwardly opposite said rear surface from near a distal end thereof and further having a ridge extending outwardly opposite said rear surface across said tongue generally parallel to and in a spaced relation to said tooth; and

(b) the second of the closure member or the container body having extending therefrom a bar; said bar being positioned such that, when said latch is in the closed configuration thereof, said bar is positioned between said tooth and said ridge such that a user, to open said latch mechanism, must manually bias the distal end of said latch to bend the latch rearwardly relative to said bar such that said tooth clears said bar while simultaneously lifting said closure member relative to said container body; said ridge inhibiting a user from opening the latch mechanism by simultaneously pushing inward on said tongue and upward on said latch mechanism such that the user must push on said tongue near said tooth while simultaneously lifting said closure member at a spaced location from said tooth requiring substantial manual dexterity.

'041 patent. Illustrative of the mechanism claimed in the '041 patent is the following drawing taken from the '041 patent specification:

Additionally, and as set forth above, plaintiff alleges that the accused products infringe claims 1–3 of the '260 patent. Those claims read as follows:

[Claim 1:] A child resistant latch mechanism for removably latching a closure member hinged to a container body and comprising:

(a) a resilient and elongate latch tongue including pawl means forming a recess thereacross;

(b) a bar sized and shaped to be received substantially entirely and flushly within said recess;

(c) said bar being positioned on one of said closure member or said container body and in spaced relation thereto; and

(d) said tongue being connected at a first and thereof to the other of said closure member on said container body and having a distal second end opposite said first end; said tongue being flexible between said first and second ends and said recess being located between and in spaced relationship to both of said first and second tongue ends, such that when said bar is positioned in said recess said closure member is latched to said container body inhibiting grasping access to said bar for aid in opening said closure member and said tongue distal second end is exposed to direct manual manipulation by a user; said tongue being engageable by a user and flexed by direct manipulating away from said

bar when said bar is positioned in said recess so as to expose said bar to direct manipulation by a user and so as to release said pawl means therefrom to enable a user to thereafter separate said tongue from said bar and open said closure member.

[Claim 2:] A mechanism as set forth in claim 1 and including:

(a) said closure member having a depending peripheral rim;

(b) said container body having a peripheral shoulder engaged by said rim when said closure member is closed upon said container body; and

(c) said rim and said shoulder being cooperatively configured to inhibit prying access to said rim to thereby release said closure member from said container.

[Claim 3:] A mechanism as set forth in claim 1 and including:

(a) hinge means pivotally connecting said closure member to said container body, said hinge means being configured to inhibit separation of said closure member from said container body when said closure member is closed upon said container body and to allow separation of said closure member from said container body when said closure member is pivoted open from said container body.

'260 patent. Illustrative of the latch closure mechanism claimed in the '260 patent is the following figure taken from the '260 patent specification:

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

In an action for patent infringement, the plaintiff bears "the burden of proving infringement by a preponderance of the evidence." *Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir.1997). Thus, to defeat Rubbermaid's motion for summary judgment of non-infringement, Pehr must show that "the evidence is such that a reasonable jury could return a verdict for [Pehr]." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Analysis

The determination of whether an accused device infringes another's patent involves a two-part inquiry. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir.1999) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)). First, the court must construe the patent to determine, as a matter of law, the scope and meaning of its claims. *Id.* Second, the claims as construed must be compared to the allegedly infringing product or method to determine whether the patent's claims are infringed. *Id.* The second step of the infringement analysis is a question of fact. *Id.* Even so, as noted by the *Vivid Technologies* court, "[i]t is well recognized that the construction of the claims may resolve some or all of the issues of infringement." *Id.* Thus, "[w]here the parties do not dispute any relevant facts regarding the accused product ... but disagree over possi-

ble claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 983 (Fed.Cir. 1997).

## A. Claim Construction

■■■ As set forth above, the first step in the infringement analysis requires the court to determine the scope of the claims set forth in the patent-in-suit. In construing the claims of a patent, the "court should first look to the intrinsic evidence, i.e., the patent itself, its claims, written description, and, if in evidence, the prosecution history." *Karlin Tech. Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971 (Fed.Cir.1999). The claim terms are to be accorded their plain and ordinary meaning unless it is apparent that the inventor intended to use them differently. *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.,* 166 F.3d 1190, 1195 (Fed.Cir.1999). The court "may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed.Cir.1998). "However, the resulting claim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Id.* at 1248 (citation omitted).

■■■ If necessary, the court may also, in its discretion, consider extrinsic evidence such as expert and inventor testimony, dictionaries, and learned treatises. *Key Pharmaceuticals v. Hercon Laboratories Corp.,* 161 F.3d 709, 716 (Fed.Cir.1998); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed.Cir.1995) ("Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.") Extrinsic evidence, however, is only to be used as an aid to the judge in understanding the patented technology, not for varying the meaning of the claim terms. *EMI Group*

*North America, Inc. v. Intel Corp.,* 157 F.3d 887, 892 (Fed.Cir.1998). Once the court arrives at an understanding of the claim language, the court must pronounce the meaning of that language as a matter of law. *Id.*

### 1. The '041 Patent

It is undisputed that the plaintiff's latch mechanism is comprised of the following basic parts: a container body, a lid with a latch bar, an elongated "tongue" structure, a "tooth" located on the distal, or top, end of the tongue, and a lower ridge which extends outwardly opposite the tongue. The tooth and lower ridge together form the upper and lower boundaries of a recess or indentation into which the latch bar structure of the lid fits to lock the container in a closed configuration. To open, or disengage, the latch mechanism, the user must manually flex or bias the distal end of the elongated tongue in a backward direction so that the tooth of the tongue structure can clear the latch bar of the lid.

According to the parties, the relevant portion of claim 4 of the '041 patent involves the following language:

> said latch comprises an elongate tongue ... *having a ridge extending outwardly opposite said rear surface across said tongue generally parallel to and in a spaced relation to said tooth....*

'041 patent (emphasis added).

In its papers, Rubbermaid asserts that the key word set forth in claim 4 is the word "having," and thus requests the court to interpret that term. "Having" is not specifically defined in the claim, the patent, or the prosecution history. Consequently, and because "[c]ommon words, unless the context suggests otherwise, should be interpreted according to their ordinary meaning," *Desper Products, Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1336 (Fed.Cir.1998), defendant urges the court to consult, and ultimately adopt, the dictionary definition of the term.

"Having" is the present participle of the verb "have." As defined by Webster's

Collegiate Dictionary, "have" is defined as "to hold, include, or contain as a part or whole." Webster's Collegiate Dictionary 533 (10th ed.1999); *accord* Webster's Third New Int'l Dictionary 1039 (1986) (defining "have" as "contain, include"). Plaintiff does not dispute this definition of the word "having," and does not offer an alternate definition of the word. Therefore, because there is no indication that plaintiff intended to assign to the term "having" any meaning other than its plain and ordinary meaning, and further because plaintiff has raised no objection to the court's construction of the term in that manner, the court adopts the dictionary definition of the term. Thus, the court concludes that the term "having," as it is used in claim 4 of the '041 patent, means "to hold, include, or contain as a part or whole."

■ According the term "having" its plain and ordinary meaning, defendant argues, requires the court to construe claim 4 as limited to latch mechanisms with tongues which contain or include a lower ridge. More specifically, defendant contends that, because claim 4 specifically claims a latch mechanism with a "tongue ... *having* a ridge," that ridge must necessarily be a part of the tongue structure. The court agrees, and therefore construes claim 4 of the '041 patent as claiming latch mechanisms with ridges that are a part of the tongue structure.

As set forth above, plaintiff does not specifically dispute, nor even address the

propriety of, defendant's asserted definition of the word "having." Instead, plaintiff's arguments relating to claim construction appear to focus on the word "ridge" as that term appears in claim 4. More specifically, plaintiff contends that "the correct limitations to the term 'ridge' are: (1) that it extends outwardly opposite the rear surface of the tongue, (2) that it extends across the tongue, and (3) that it is generally parallel to and in a spaced relation to the tooth." Pl.Mem. in Opp. at 10.

Defendant does not dispute plaintiff's assertion that the ridge is subject to the above three limitations, and instead explains that, whatever the qualifying characteristics of the "ridge" of the latch mechanism, the ridge must be contained by, i.e., be a part of, the tongue structure itself. To the extent that defendant does not object and in light of the fact that his proposed construction of the characteristics of the "ridge" is supported by the language of claim 4, the court adopts plaintiff's proposed construction with respect to the qualifying attributes of that term. Thus, the "ridge" must (1) extend outwardly opposite the rear surface of the tongue, (2) extend across the tongue, and (3) be generally parallel to and in a spaced relation to the tooth. Contrary to plaintiff's apparent understanding of the issue, however, this construction of the ridge's features does not in any way change the court's conclusion that the ridge must be a part of the tongue structure.[1] In fact, and

---

1. The court notes that a construction of the word "ridge" also supports defendant's assertion that claim 4 of the '041 patent requires the lower ridge to be a part of the tongue structure. Although the remainder of claim 4 sets forth the attributes of the particular ridge which "extend[s] outwardly opposite [the] rear surface of the tongue across [the] tongue," it does not specifically define the term "ridge." According to Webster's, a "ridge" is "a small raised line on the surface of metal, cloth, or bone." Webster's Third New Int'l Dictionary 1953; *accord* Webster's Collegiate Dictionary (10th ed.1999) (defining "ridge" as "a raised strip (as of plowed ground)"). Neither party has requested the court to interpret the actual meaning of the

term "ridge." Even so, were the court to consider that term in light of its plain and ordinary meaning, it would likely conclude that the term "ridge" also compels the conclusion that the lower "ridge" structure must arise from, or otherwise be a part of, the tongue of the latch mechanism. Indeed, the definition of ridge appears to describe a raised portion of a foundational structure, i.e., the "tongue" in this case. Thus, to be considered a "ridge," it appears that a structure must be an elevated or raised portion of the tongue. The alternative meanings accorded the word "ridge" each support the conclusion that a "ridge" arises from, or erupts out of, a base surface such as the ground. *See* Webster's Third New Int'l Dictionary 1953 (fur-

as defendant asserts, the "extending outwardly" and "across said tongue" language of claim 4, as it relates to the characteristics of the ridge, supports the conclusion that the ridge must be a part of the tongue structure.

As with the "having" term, plaintiff does not challenge defendant's suggestion that the terms "extending" and "outwardly" should be accorded their plain and ordinary meanings. Instead, plaintiff merely persists in his blanket assertion that the ridge is only limited by the language set forth in claim 4, (i.e., that the ridge (1) extends outwardly opposite the rear surface of the tongue, (2) that it extends across the tongue, and (3) that it is generally parallel to and in a spaced relation to the tooth.) Plaintiff's assertions are unhelpful, however, because they offer the court no assistance in construing those terms.

According to Webster's, "extending," the present participle of the verb "extend," is defined as "to cause to project in one or more directions: stick out," Webster's Third New International Dictionary 804, and "outwardly" is defined as "on the outside" or "toward the outside: in an outward direction." *Id.* at 1605. Taken together, and read in the context of claim 4, those words suggest—and, therefore, support the court's construction of the word "having"—that the lower ridge is a part of the tongue structure itself, projecting from or sticking out in an outward direction from the tongue.

Absent any dispute or alternate definition of those terms, and further in light of the lack of any indication from the patent itself that Mr. Pehr intended otherwise, the court accepts defendant's proposed construction of the "extending outwardly" language to mean that the lower ridge must project from the tongue. As set forth above, this construction fully comports with the court's interpretation of the

word "having," and, as was the case with that term, is consistent with the illustrations of plaintiff's invention as set forth in the patent specification.

Additionally, while certainly not disagreeing with plaintiff's contention that the ridge must also extend "across said tongue," defendant asserts that construction of the phrase "across said tongue" also supports its contention that the ridge must, in fact, be a part of the tongue structure. That phrase is not defined in the patent, and the court therefore concludes that it is to be interpreted in light of its customary meaning.

According to Webster's, "across" is defined as "in a position reaching from one side to the other." Webster's Collegiate Dictionary 11 (10th ed.1999); *accord* Webster's Third New Int'l Dictionary 20 (1986) (defining across as "so as to cross transversely: crosswise"). As with the other patent terms construed above, plaintiff does not offer an alternative definition with respect to the word "across." Thus, the court interprets that term, and, consequently, the phrase "across said tongue," as meaning that the ridge must reach from one side of the tongue to the other.

■ As set forth above, plaintiff does not specifically dispute defendant's interpretation of the terms "having," "extending outwardly," "across said tongue," or "generally parallel to . . . said tooth." In addition to his mere blanket assertion with respect to the three limitations of the term "ridge," plaintiff alternatively attempts to dismiss defendant's contention that claim 4 requires the ridge to be a part of the tongue structure by insisting that such an interpretation is improperly gleaned from the patent illustrations which portray the ridge as a projection of the lower portion of the tongue. Plaintiff is correct in his assertion that the court may not use the patent illustrations or

ther defining "ridge" as "an elevated body part projecting from a surface . . . a range of hills or mountains . . . a top or upper part . . . a raised line or strip (as of ground thrown up by a plow between furrows)"). Read in the context of claim 4, the "ridge" language connotes a structure arising out of base surface, in this case, the tongue.

other portions of the specification to limit the scope of the patent claims. *See Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir.1998). However, and even though the '041 patent drawings do, in fact, depict latch mechanisms with tongues from which both the tooth and the ridge project, the court is not, by its construction, limiting plaintiff's claims to those illustrations. Instead, the court's construction is limited by the language of the patent itself, and the illustrations are simply consistent with that interpretation. *See Cortland Line Co., Inc. v. Orvis Co., Inc.*, 203 F.3d 1351, 1356 (Fed. Cir.2000) (noting that court's construction of patent term was "reinforced by the words and drawings" of the patent). Accordingly, because the court's construction does not rely upon, but is merely consistent with, the illustrations included as a part of the patent specification, plaintiff's argument on this basis is rejected.

### *2. The '260 Patent*

The '260 patent describes a latch closure mechanism very similar to that disclosed in the '041 patent. The only apparent dispute between the parties regarding the language of that patent involves the following language from claim 1:

(a) a resilient and elongate latch tongue *including pawl means* [2] *forming a recess thereacross;*

---

**2.** The court notes that, despite the use of the word "means" in claim 1 of the '260 patent, there is no indication that claim 1 is a so-called means-plus-function claim within the realm of 35 U.S.C. § 112, ¶ 6. As a preliminary matter, and as duly pointed out by defendant, no concomitant function is recited as being performed by the pawl means, and thus it does not appear that the claim could qualify under § 112, ¶ 6 in any event. In light of the fact that plaintiff did not address the issue in his response to defendant's motion, and because the court does not believe that claim 1 of the '260 patent meets the definition of a means-plus-function claim, the court construes claim 1 in light of ordinary patent claim interpretation principles.

(b) a bar sized and shaped to be received *substantially entirely and flushly* within said recess;

'260 patent (emphasis added).

▋ As with the "having" term used in claim 4 of the '041 patent, defendant asserts that the term "including" in claim 1 of the '260 patent requires both the upper and lower portions of the pawl means [3] to be a part of the tongue structure of the latch mechanism. Because nothing in the claims, the patent specification, or the prosecution history suggests otherwise, and further because plaintiff neither contests defendant's proposed interpretation nor offers an alternate definition of the term "including," the court construes that term in light of its plain and ordinary meaning.

According to Webster's, "including," the present participle of the verb "include," is defined as "to take in, enfold or comprise as a discrete or subordinate part or item of a larger aggregate, group, or principle." Webster's Third New Int'l Dictionary 1143 (1986); *accord* Webster's Collegiate Dictionary 588 (10th ed.1999) (defining "include" as "to take in or comprise as a part of a whole" or "to contain between or within"). In the absence of any objection from plaintiff, the court construes the term "including" as requiring both the upper and lower portions of the pawl means to be contained by, and therefore to comprise, as a part of the whole, the tongue structure in this case.

---

**3.** The patent does not specifically define "pawl means." Without objection, defendant offers the following definition of the word "pawl:" "A pivoted catch ... engaging by an edge or hook with a ratchet wheel or a rack ... to prevent reverse motion...." Def. Op.Br. at 13 (quoting Dictionary of Mechanical Engineering (4th ed.1996)); *accord* Webster's Collegiate Dictionary 853 (10th ed.1999) (defining "pawl" as "a pivoted tongue or sliding bolt on one part of a machine that is adapted to fall into notches or interdental spaces on another part (as a ratchet wheel) so as to permit motion in only one direction.")

The court notes that this construction of the word "including" is entirely consistent with, and therefore reinforced by, the patent illustrations and the language set forth in the patent specification. Indeed, all of the drawings included in the patent description depict tongue structures from which two projections extend. Moreover, the specification expressly states that "[t]he principal objects of the present invention are: ... to provide such a container including a latch tongue *having pawl projections* defining a latch recess...." '260 patent at 3:16–18 (emphasis added). Additionally, in describing three of the patent's illustrations, the specification explains that "[t]he tongue 28 includes an upper pawl 30 and a *somewhat similar lower wedge like formation or lower pawl* 31 separated by a latch bar receiving recess or notch 32 extending across the tongue 28." *Id.* at 5:68–6:4 (emphasis added).

Moreover, a construction of the phrase "pawl means forming a recess thereacross" further supports the conclusion that the upper and lower portions of the pawl means must project or extend from the tongue structure. Citing that language, defendant argues .that, unless the pawl means consists of two projections from the tongue structure, no recess can be formed across the tongue. The court agrees.

Although neither party specifically offers a construction of the term "recess," according the word its plain and ordinary meaning, a recess is "an indentation in a straight line or in a surface bounded by a line conceived of as straight: cleft." Webster's Third New Int'l Dictionary 1894 (1986); *accord* Webster's Collegiate Dictionary 975 (10th ed.1999) (defining "recess" as "indentation, cleft.") Thus, for a recess to be formed by the pawl means across the tongue, there must be an indentation across the tongue's surface, and no such recess can be formed across the tongue structure by the pawl means unless both portions of the pawl means are themselves a part of the tongue.

With respect to the "substantially entirely and flushly" limitation of claim 1, although defendant asserts that its product has no corresponding structure matching those limitations, it does not suggest a construction of that phrase. As with the majority of the patent terms interpreted here, plaintiff has not offered a proposed construction, and nothing in the patent indicates that plaintiff intended to assign to those terms definitions other than those by which they are customarily understood. Thus, the court construes those terms in light of their plain and ordinary meaning.

Webster's defines "substantially," the adverbial form of "substantial," as "being largely but not wholly that which is specified." Webster's Collegiate Dictionary 1174 (10th ed.1999). "Entirely" is defined as "to the full or entire extent: completely." *Id.* at 387. "Flushly," the adverbial form of "flush," is defined as "having or forming a continuous plane or unbroken surface." *Id.* at 449. Thus, the court construes the phrase "substantially entirely and flushly" as requiring the lid's latch bar to fit within the recess formed across the tongue in a manner that creates an almost completely continuous plane with the outer, front side of the container.

## B. Literal Infringement

■ Having determined the scope and meaning of the relevant claims, the court turns next to the second step of the infringement analysis: comparing the claims as construed to Rubbermaid's allegedly infringing products. *Markman,* 52 F.3d at 976. To establish literal infringement, "the accused device [must] contain each limitation of the claim exactly; any deviation from the claim precludes a finding of literal infringement." *Litton Systems, Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1454 (Fed.Cir.1998). Because the "determination of whether the properly construed claims read on the accused device [ ] is a question of fact, ... summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether

the accused device is encompassed by the claims." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed.Cir. 1999).

### 1. The '041 Patent

Defendant argues that its products do not literally infringe claim 4 of the '041 patent because they lack a required element of the claim. Specifically, defendant maintains that its allegedly infringing *Actionpacker* ® products do not "hav[e]" a ridge that "extend[s] outwardly across said tongue" as required by claim 4 of the '041 patent. Plaintiff disagrees and instead insists that defendant's containers literally infringe because, according to plaintiff, the front portion of defendant's latch block constitutes a "ridge" that meets the precise language of claim 4 because it (1) extends outwardly opposite the rear surface of the tongue, (2) extends across the tongue, and (3) is generally parallel to and in a spaced relation to the tooth located on the distal end of the tongue.

More specifically, plaintiff claims that when the lid of the Rubbermaid container is in a closed configuration, the lid's latch bar sits "above a structure that is *connected* to the base of the latch tongue." Pl. Mem. in Opp. at 4, ¶ 15 (emphasis added). This structure is, according to plaintiff, identical to the lower ridge disclosed in claim 4 of the '041 patent, and thus literally infringes plaintiff's patent. Defendant denies plaintiff's characterization of its product, and notes that the structure to which plaintiff refers is not a part of the tongue, but is instead the front wall of the latch block, and therefore a part of the closure device as a whole. Furthermore, because the front wall of the latch block does not itself project from the tongue of the latch mechanism, defendant maintains, it is impossible for it to be considered as

"extending outward and in a direction opposite the rear surface of the tongue." Def.Resp. at 4. Finally, defendant contends, the front wall does not extend "across said tongue" because it does not reach from one side of the tongue to the other.

The court finds its construction of the terms "having," "extending outwardly," and "across said tongue" dispositive of the literal infringement issue and concludes that, as a matter of law, defendant's products do not literally infringe claim 4 of the '041 patent. To that end, the court believes that plaintiff's arguments to the contrary miss the mark because they fail to address what the court deems determinative of the analysis, that is, whether the tongue of the defendant's closure mechanism "ha[s]" a ridge that "extend[s] outwardly" and "across" the tongue as those terms are used in the patent.

The court notes that, although it agrees with plaintiff's contention that the front wall of defendant's latch block is connected to the tongue, it does not agree that the manner in which it is connected means that the tongue "has" a ridge. Instead, the court concludes that to "have" a ridge, and thus to literally infringe claim 4 of the '041 patent, the tongue would be required to contain or include the front wall of the latch block, not merely be connected to it by virtue of the tongue's inclusion as part of the latch block as a whole. An inspection of defendant's product reveals that, rather than "having" the front wall of the closure device, the element plaintiff maintains is identical to the "ridge" claimed in the '041 patent, the tongue and the front wall are separate parts of the latch block as a whole. Indeed, while the latch block of defendant's device "has" both a tongue and a front wall, the tongue does not itself "have" the front wall.[4]

---

4. In its papers, defendant offers an analogy to assist the court in determining whether its product literally infringes claim 4 of the '041 patent. Altered here slightly to more adequately emphasize the relevant point, the court has considered defendant's extrapola-

tion of the plaintiff's argument to the components of an automobile.

A car is comprised of several parts, including, for example, doors, windows, a trunk, and a hood. Taken to its logical extreme, plaintiff's argument would compel the conclu-

Application of the court's construction of the "extending outwardly" and "across said tongue" language to defendant's closure device compels the same result. Indeed, because the court has construed those terms as supporting the interpretation that the ridge must be a part of the tongue, and because, as set forth above, the accused devices do not precisely match that limitation, plaintiff cannot, as a matter of law, demonstrate literal infringement. Accordingly, the court grants defendant's motion for summary judgment on the issue of literal infringement of claim 4 of the '041 patent.[5]

### 2. The '260 Patent

█ The parties do not seriously dispute that the "ridge" structure referred to in claim 4 of the '041 patent corresponds to the lower portion of the pawl means claimed in the '260 patent. Accordingly, and for substantially the same reasons that summary judgment is appropriate on plaintiff's literal infringement claim with respect to the '041 patent, the

court likewise grants defendant's motion for summary judgment with respect to literal infringement of the '260 patent. More specifically, because the tongues of the accused devices do not "includ[e]" the lower portion of a pawl means as that term is used in the patent, defendant's products lack a required element of independent claim 1 of the '260 patent. In fact, contrary to plaintiff's claim that what plaintiff calls the "lower pawl means" of defendant's mechanism "is molded to and *is a permanent part of the tongue,*" Pl. Mem. in Opp. at 13 (emphasis added), that component of defendant's latch block is not, in fact, a part of the tongue, but is instead a part of the latch block, and for that reason, does not literally infringe.

Plaintiff's assertions regarding the existence of the recess-formed-across-the-tongue-structure-by-the-pawl-means are similarly unpersuasive. Indeed, despite plaintiff's bald assertion that, on the accused products, the "lower pawl means rises nearly half-way up the height of the

---

sion that the trunk of the vehicle "has" the hood. Such an assertion is implausible. Instead, it is the car that "has" both the hood as well as the trunk—both elements are included or contained as a part of the vehicle as a whole.

5. In its opening brief defendant argues that, in addition to not "having" a ridge "extending outwardly across [the] tongue," its product does not literally infringe for the additional reason that it does not exhibit the third characteristic of the ridge, that is, the front wall of defendant's latch block is not "generally parallel to ... [the] tooth." Defendant did not, however, request the court to construe that phrase, and, rather than offering the court a proposed construction of that language in his response, plaintiff merely asserts that defendant's product meets that limitation, a contention with which defendant disagrees.

Because neither party has presented the court with a proposed construction of that phrase, the court did not address the matter in the claim construction section above. To the extent that interpretation of "generally parallel to ... [the] tooth" is somehow helpful or even necessary to the court's resolution of defendant's motion, the court will construe the phrase.

As with the other terms the court has been called upon to construe, the phrase "generally parallel to ... said tooth" is not defined in the patent or its specification, and nothing therein suggests that Mr. Pehr intended those words to be accorded anything other than their customary meaning. According to Webster's, "generally" is defined as "in disregard of specific instances and with regard to an overall picture," Webster's Collegiate Dictionary 485 (10th ed.1999), and "parallel" is defined as "extending in the same direction, everywhere equidistant, and not meeting." *Id.* at 842. Thus, as it modifies the ridge, the court construes the phrase "generally parallel to ... said tooth" as requiring the ridge to extend outwardly in a direction that is, overall, equidistant from the lower side of the tongue's tooth.

The court agrees with defendant's contention that the front wall of its latch block is not "generally parallel to" the lower side of the tooth. Instead, because the front wall extends in a vertical direction from the base of the latch block, the front wall is perpendicular to, not parallel to, the lower side of the tooth. Accordingly, the court concludes that defendant's product does not literally infringe for the additional reason that it lacks this element as required by the '041 patent.

tongue and extends outward *from* the tongue across the entire front surface of the tongue," Pl.Mem. in Opp. at 13 (emphasis added), the court concludes otherwise. First, and as set forth in more detail above, the tongues of the accused products do not include a lower projection that extends outwardly opposite the rear surface of the tongue, and certainly do not have a lower projection extending *from* the tongue. Instead, the front wall of the accused latch mechanisms extends vertically from the base of the latch block—not *from* the tongue as asserted by plaintiff. Because the court concludes that to literally infringe, a lower portion of the pawl means must extend from the tongue of the latch mechanism itself, plaintiff's contention that a recess can be formed by the pawl means across the tongue is contrary to the court's construction of the terms of the '260 patent and is, therefore, unavailing.

Because the court finds that the tongue structure of the accused products do not "includ[e]" a lower portion of a pawl means and thus do not literally infringe independent claim 1 of the '260 patent, defendant's products cannot, as a matter of law, literally infringe any of its dependent claims. *See, e.g., Becton Dickinson and Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 798 (Fed.Cir. 1990) (citing *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9, (Fed.Cir.1989)) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). Accordingly, defendant is entitled to summary judgment on the issue of literal infringement with respect to claims 2 and 3 of the '260 patent as well.

The court further notes that, although defendant raised the issue in its opening brief, plaintiff does not appear to contend that defendant's device literally infringes with respect to claim 1's limitation requiring the lid having "a bar sized and shaped to be received substantially entirely and flushly within said recess." Instead, plaintiff addresses the issue only in arguing that "Rubbermaid is incorrect that its bar

is not an equivalent to the claimed element, which states: 'a bar sized and shaped to be received substantially entirely and flushly within said recess.'" Pl. Mem. in Opp. at 16. Thus, because plaintiff appears to concede that defendant's product does not have a component identical to the above-claimed bar, summary judgment of literal non-infringement would be appropriate on that basis alone. *See, e.g., Overhead Door Corp. v. Chamberlain Group, Inc.,* 194 F.3d 1261, 1269 (Fed.Cir. 1999) ("Literal infringement of a claim requires that every limitation recited in the claim appear in the accused device, i.e., that the properly construed claim reads on the accused device exactly.") Moreover, because the court concludes that defendant's products lack at least one of the required elements of claim 1—i.e., the tongue of the accused devices do not "includ[e]" a lower portion of a pawl means—the court need not also determine whether the latch bar of defendant's lid meets the "substantially entirely and flushly" limitation of claim 1 for purposes of defendant's motion for summary judgment of literal non-infringement.

Were the court to consider the question, however, it is unlikely that plaintiff's claim with respect to the "substantially entirely and flushly" limitation would survive summary judgment of literal non-infringement in any event. More specifically, because the latch bar found on defendant's products does not fit "substantially entirely and flushly" within the space formed between the front wall and the tongue of the latch block, it does not exactly match the limitations set forth in claim 1 of the '260 patent. Indeed, unlike plaintiff's latch bar, when defendant's lid is in the closed configuration, a substantial portion of the upper side of the bar is exposed. Thus, defendant's products lack another element required by claim 1 of the '260 patent, and for that additional reason, defendant's motion for summary judgment with respect to plaintiff's claim of literal infringement of the '260 patent is granted.

### C. Doctrine of Equivalents

#### 1. All–Elements Rule

 Under the doctrine of equivalents, a product that does not literally infringe "the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir.1998) (quoting *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)). The doctrine of equivalents exists "to prevent a 'fraud on the patent' when an accused infringer is 'stealing the benefit of the invention' by making insubstantial changes that avoid the literal scope of the claims." *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed.Cir.1998) (citations omitted).

 As set forth above, infringement under the doctrine of equivalents will lie where the differences between the accused device and the claimed product are insubstantial. Often utilized by courts to determine whether the asserted differences are sufficiently insubstantial is the tripartite "function/way/result" test: that is, an accused device infringes under the doctrine of equivalents if it performs substantially the same function in substantially the same way to achieve substantially the same result as each element of the claimed invention. *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1270 (Fed.Cir.1999) (citing *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)).

In *Warner–Jenkinson*, the Supreme Court clarified the doctrine of equivalents and emphasized the importance of the so-called "all-elements" rule, explaining that

[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. 1040.

Mr. Pehr argues that even if Rubbermaid's *Actionpacker* ® products do not literally infringe claim 4 of the '041 patent and claims 1–3 of the '260 patent, they infringe under the doctrine of equivalents. Defendant disagrees that the latch mechanisms on its products are equivalent to those disclosed in plaintiff's patents, and argues that, in any event, plaintiff has failed to demonstrate the existence of a triable fact issue with respect to the equivalence doctrine. More specifically, defendant points out that plaintiff submitted with his papers no material evidence to support his contentions regarding the alleged equivalency of Rubbermaid's latch mechanisms to those claimed in the '041 and '260 patents. Indeed, the only evidence relevant to the infringement analysis on the summary judgment record consists of the '041 and '260 patents and their corresponding prosecution histories, plaintiff's responses to defendant's first and second sets of interrogatories,[6] an exemp-

6. Despite plaintiff's representations to the contrary as set forth in his motion for leave to file a sur-reply, the court notes that, in response to defendant's motion, plaintiff did not, in fact, refer to his answers to defendant's interrogatories as factual support for his equivalence theory. Instead, plaintiff submitted and referred the court to his interrogatory responses only in contradicting defendant's assertion that plaintiff waived his doctrine of equivalents claims by not raising those claims in response to defendant's interrogatory questions. Because in his response to defendant's motion plaintiff did not cite his interrogatory answers as evidence to support his doctrine of equivalents claims to satisfy his summary judgment burden, the court need not so consider them. Out of an abundance of caution, however, the court will treat plaintiff's interrogatory responses as if they had been proffered as evidence of plaintiff's equivalence theory.

lar of one of defendant's *ActionPacker* ® products, and various photographs, diagrams and other depictions of defendant's allegedly infringing latch closure mechanism.

According to the general principles governing the resolution of summary judgment motions, Rubbermaid may prevail on its motion by establishing the "absence of evidence to support the nonmoving party's [Mr. Pehr's] case" with respect to an issue—in this case, infringement—on which Mr. Pehr will bear the burden of proof at trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Moreover, it is well-settled that, on a motion for summary judgment of non-infringement under the doctrine of equivalents, "[the patentee] ha[s] a duty to submit evidence tending to show equivalence with respect to limitations not literally met by the accused infringing device." *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 985 (Fed.Cir.1997); *accord Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1317 (Fed.Cir.1999) (affirming district court's grant of summary judgment of non-infringement; conclusory statement by patent attorney expert insufficient to raise issue of material fact on equivalence claim); *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389 (Fed. Cir.1992) (summary judgment of non-infringement appropriate where patentee fails to produce any evidence of equivalency). Indeed, to survive summary judgment on the issue of infringement under the doctrine of equivalents, "there must be sufficient substance, other than attorney argument, to show that the issue requires trial." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1562 (Fed.Cir.1995).

Considering the evidence on the summary judgment record before the court, the court concludes that plaintiff has failed to submit sufficient evidence from which a reasonable factfinder could determine that the ridge/lower portion of the pawl means of the patents-in-suit are met equivalently by the front wall portion of Rubbermaid's latch blocks. To that end,

the court finds plaintiff's responses to defendant's interrogatories wholly insufficient to constitute competent evidence to support his equivalency theory. Indeed, the only relevant language found in those responses include such statements as:

> To the extent claim [4] of U.S.Patent No. 4,925,041 and claims 1–3 of U.S.Patent No. 5,137,260 are found not to be literally infringed, then the same claims are infringed under the doctrine of equivalents. Each of the elements of the Asserted Claims, or its equivalent, is found in models 1185 and 1186 of Rubbermaid's ActionPacker containers.

Ex. K to Pl.Mem. in Opp. at 7. Without more, such conclusory assertions are insufficient to defeat summary judgment. *See, e.g., Zelinski,* 185 F.3d at 1317 ("expert's assertion without any further explanation that '[b]ecause there is literal infringement, there is infringement under the doctrine of equivalents'" too conclusory to constitute sufficient evidence of equivalency to avoid summary judgment).

Plaintiff has further failed to come forward with specific facts from which the trier of fact could conclude that the latch bar of defendant's closure device differs only insubstantially from that claimed in the '260 patent. Instead, plaintiff offers only the arguments set forth in his papers to support his theory that the latch bars are equivalent despite their physical differences. Such a showing is insufficient to avoid summary judgment. *See, e.g., Glaverbel,* 45 F.3d at 1562. As a result, plaintiff has failed to demonstrate the existence of a triable fact issue with respect to infringement of the patents-in-suit under an equivalency theory, and defendant is entitled to summary judgment of non-infringement with respect to plaintiff's doctrine of equivalents claims.

### 2. Motion for Leave to File Sur-reply

Plaintiff has filed a motion requesting leave to file a sur-reply to defendant's reply brief. Citing his responses to defendant's interrogatories, plaintiff challenges defendant's assertion in its reply brief that

plaintiff has failed to provide sufficient evidence to avoid summary judgment as "deceptive and grossly inaccurate." Pl. Proposed Sur-reply at 1. In case the court is inclined to agree with defendant's assessment of the matter, however, plaintiff urges the court to consider plaintiff's affidavit attached to his proposed sur-reply as further evidence to support his doctrine of equivalents theory.

■■■ There is no provision in the local rules of this court for the filing of surreplies; in fact, District of Kansas Rule 7.1 allows only for the filing of motions, responses, and replies. *See* D.Kan.Rule 7.1. Leave to file a surreply is generally only granted in "rare circumstances" as where the movant "improperly raises new arguments in a reply." *Humphries v. Williams Natural Gas Co.*, No. 96–4196–SAC, 1998 WL 982903, at *1 (D.Kan. Sept. 23, 1998).

■■■ Plaintiff contends that the court should grant his motion for leave to file a surreply because defendant improperly raised the "sufficiency of the evidence on the summary judgment record" argument for the first time in its reply brief. For this reason, plaintiff claims, he should be allowed the opportunity to respond to and refute this argument. This assertion is utterly groundless. That it was only after plaintiff responded to defendant's motion for summary judgment that an assessment of the sufficiency of the evidence offered by plaintiff to avoid summary judgment could be made does not mean that defendant improperly raised the issue for the first time in its reply brief. In fact, defendant clearly set forth plaintiff's evidentiary burden on summary judgment in its opening brief. Def.Mem. in Supp. at 7. Thus, plaintiff was on notice that, to avoid summary judgment on his infringement claims, he was required to come forward with

sufficient evidence from which a reasonable factfinder could infer that defendant's products infringe the patents-in-suit either literally or equivalently. Accordingly, because defendant did not raise a new argument or theory in support of its motion for summary judgment, plaintiff is not entitled to file a surreply. For this reason, plaintiff's motion for leave to file a sur-reply is denied.[7]

Out of an abundance of caution, however, the court has read plaintiff's sur-reply as well as his attached affidavit and finds that, were it to grant plaintiff's motion for leave to file a sur-reply and consider plaintiff's affidavit filed therewith as evidence to support his doctrine of equivalents theory, its resolution of defendant's motion with respect to infringement by equivalence would not change. Indeed, contrary to his assertions that the statements set forth in Mr. Pehr's affidavit are sufficient to create an issue of material fact, the court finds the statements set forth in Mr. Pehr's affidavit too conclusory to support that contention.

As set forth above, the burden of demonstrating infringement is on the patentee. Here, to defeat Rubbermaid's motion for summary judgment, Mr. Pehr was required to come forward with specific facts from which a reasonable factfinder could conclude that the *ActionPacker*® latch mechanisms met all of the '041 and '260 patents' limitations at least equivalently. *See Zelinski*, 185 F.3d at 1317; *Intellicall*, 952 F.2d at 1389. Mr. Pehr's affidavit fails to satisfy that burden: his statements are either wholly conclusory or incomplete. Indeed, although in some instances his affidavit addresses the "function" prong of the doctrine of equivalents test as it relates to an allegedly equivalent structure found on the accused devices, it does not

---

7. The court further notes that although Mr. Pehr's affidavit could have easily been secured at any time and therefore filed with his memorandum in opposition to defendant's motion for summary judgment, plaintiff failed to do so, and instead chose to rest upon the wholly conclusory statements set forth in his answers to defendant's interrogatories, which, as the court explained above, are insufficient to create a triable fact issue with respect to plaintiff's equivalence claims. In his papers, plaintiff has offered no explanation as to why he did not file his affidavit in response to defendant's motion.

**1238**

address the corresponding "way" or "result" prongs of the tripartite test. Regarding other disputed elements of his invention, specific facts to support Mr. Pehr's assertions of equivalency are not offered at all. Instead, Mr. Pehr simply states that certain elements of his patent are met equivalently by a structure of defendant's product "because it performs substantially the same function, in substantially the same way and accomplishes substantially the same result." Such statements are mere recitations of the legal test of equivalency rather than evidence establishing precisely, or even vaguely, *how* the cited structures equivalently meet the limitations of the disputed claims in terms of similarity of function, way, or result, and are, for that reason, wholly insufficient to create an issue of material fact for trial.

Accordingly, the court concludes that, even if it were to consider plaintiff's affidavit in addition to the wholly conclusory responses to defendant's first and second sets of interrogatories, summary judgment in favor of defendant on the issue of non-infringement under the doctrine of equivalents must be granted. Plaintiff has simply failed to submit sufficient evidentiary facts from which a reasonable factfinder could determine that the disputed limitations of the patents in suit are met equivalently by corresponding structures of Rubbermaid's latch blocks. As a result, plaintiff has failed to demonstrate the existence of a triable fact issue with respect to infringement under the doctrine of equivalents, and defendant is therefore entitled to summary judgment of non-infringement with respect to plaintiff's equivalency claims.[8]

**IT IS THEREFORE BY THE COURT ORDERED THAT** defendant's motion for summary judgment of non-infringement (doc. 48) is GRANTED.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's motion for leave to file a sur-reply (doc. 61) is DENIED. Plaintiff's complaint is dismissed in its entirety.

---

8. Because the court concludes that Mr. Pehr has failed to demonstrate the existence of a material fact issue with respect to his doctrine of equivalents claims, the court need not address defendant's arguments regarding the application of prosecution history estoppel to limit the scope of equivalents assertable by plaintiff in this case.